Next case, number 5 is Ameren Illinois Company v. International Brotherhood of Electrical Workers. May it please the court, my name is Patrick Shinners and I represent the defendant Appellant Local 51, International Brotherhood of Electrical Workers. This case involves the enforceability of a labor arbitration award. The issue before this honorable court is whether arbitrator George Fleisley's arbitration award draws its essence from the collective bargaining agreement. Under this exceedingly narrow scope of judicial review, this court should reverse the district court and enforce arbitrator Fleisley's award. The parties have bargained the arbitration and grievance procedures in the contract. They're found in Articles 2 and 3. I will use the terms contract and collective bargaining agreement interchangeably. An arbitrator owes fidelity to the collective bargaining agreement and the provisions therein. Was there anything in the collective bargaining agreement that permitted the arbitrator to look to the Concealed Carry Act in rendering his decision here? Nothing specific, your honor, just the just cause provision in general. And was that something, assuming you're correct, that he could look to that in interpreting just cause? Is that something he actually did? Absolutely. He looked to the company's external work rule on workplace violence and then he found that he could not apply it to the grievance action of bringing a firearm onto the company's property based on the external law. I know he'd looked to the external law, but did he ground his decision in the external law in interpreting just cause? Yeah, he simply found that there was no just cause for the termination and reduced it to a 30-day suspension. Under Article 3... How do you get around this court's decision in Roadmaster, which said that an arbitrator can't consider positive law? Absolutely, your honor. Roadmaster is a logical extension of Seventh Circuit law. Roadmaster stands for the principle that an arbitrator cannot find that there is clear contract language and then refuse to apply that clear contract language because of external law. The issue before the arbitrator in Roadmaster was whether the company's notice to terminate the collective bargaining agreement defeated the rollover provision of the contract. If the notice was insufficient, then the contract would renew or rollover. The arbitrator found that the rollover provision was clear and unambiguous and that if he followed that, then the company did in effect terminate the contract. Then he chose to ignore that clear contract language and he looked to the NLRA to find that the contract did rollover. So we were dealing with a provision of the contract in Roadmaster that was ignored by the arbitrator. Roadmaster was decided 30 years ago, wasn't it? Roadmaster was decided 30 years ago. Yes, your honor. I know. It doesn't seem like it. So that's just not the case before this court. The company doesn't point to any language in the contractor that arbitrator fleshly ignored. The work rule is not the equivalent of a provision of the collective bargaining agreement. That's been confused by the other side and that is what distracted the district court in its opinion. The company has admitted that the work rule is not a provision of the contract but it attempts to bootstrap past that and elevate it to the status of a collective bargaining agreement provision requiring strict compliance. There's no authority for that claim and it's not true. An arbitrator owes no fidelity to the company's extra contractual work rules. The parties stipulated that the issue before arbitrator fleshly was whether or not there was just cause for the termination of the grievant and if not, what is the appropriate remedy? The provision of the contract at issue was the just cause provision, Article 6, Section 4A. The company agreed that the arbitrator had the authority to construe that provision and he did exactly that. It's not a defined term in the collective bargaining agreement and it's very elastic which puts a lot of discretion in the hands of the arbitrator in what sources to look to to determine whether this was a just termination or an unjust termination. I agree completely. Just cause is ambiguous by its very nature. And the Roadmaster case had to do with some very concrete contract terms that were not similarly elastic. I agree completely. Just cause is not defined in the contract. Arbitrators are routinely asked to interpret and apply a company's work rule as part of a just cause analysis just as arbitrator fleshly was asked to do here. That analysis involves an examination of whether the facts make up a violation of the work rule and whether the work rule or whether the application of the work rule is reasonable in light of principles of fairness and equity. Arbitrators do have almost limitless authority to determine whether it's equitable or fair to apply a work rule in light of the facts and the circumstances of the case. Arbitrator fleshly found that he did in fact violate the workplace rule but that it did not rise to the level of just cause based on the Illinois concealed carry. If we did affirm it, we would send it back for further arbitration, right? We could send it back for further arbitration. Yes, Your Honor. If you affirm the district court's ruling that the district court ruled that it would be remanded back to the arbitrator. So arbitrator fleshly believed that it was unreasonable and unfair to apply this policy to the grievant under these circumstances. In reaching this conclusion, arbitrator fleshly recognized the critical distinction between a work rule and a provision of the contract. This circuit has made it very clear that an arbitration award will be enforced as long as the arbitrator does not overtly declare that he or she is not going to follow clear language of the contract. That would be the contract says A. The arbitrator recognizes the contract says A but he or she goes ahead and does B. A clear misinterpretation of the contract language by the arbitrator is not grounds for a court to overturn an award nor is a mistake. If the arbitrator is even arguably interpreting the contract, judicial review is at an end absent fraud or corruption. Is there any evidence to support the defendant's assertion that the workplace rule here was collectively bargained for and therefore part of the contract? They seem to make that assertion and I'm not sure what supports it. There is no evidence that it was bargained, that it was agreed upon, absolutely no evidence. Is there anything in the collective bargaining agreement that would support that the workplace rule is part of that collective bargaining agreement? Nothing. In Arch of Illinois, the Seventh Circuit found that an arbitrator exceeds his or her authority in a just cause analysis if the arbitrator unambiguously finds that there is just cause for the discipline and nevertheless reverses it. The law is clear that an arbitrator can look beyond the four corners of the contract to aid in interpreting a provision of the contract. Arbitrator Fleishley did not exceed his authority by looking outside the contract to the company's unilateral work rule and to the Illinois Concealed Carry Act to aid in interpreting the just cause provision. This case involves the possession of a firearm on the company's parking lot, but the implications go far beyond the issue of guns in the workplace. Employers make all kinds of workplace rules on all kinds of topics such as social media, drugs, sick leave, maintaining trucks, and unions have the right to challenge the application of those rules when they are administered in the form of discipline. Arbitrator Fleishley did not maintain an infidelity to the contract when he refused to apply the company's unilateral workplace rule in light of external law. If the law were to be expanded to require fidelity to a company's workplace rule, we have strayed pretty far afield in letting the company write the contract. This would render the just cause provision of the contract meaningless. If you don't have any further questions at this time, thank you. Please look forward. I'm Robert Siegel. I represent Ameren Illinois Companies in this case. This case presents a situation where the employer has failed to obtain what it paid for. In essence, the employer paid for the arbitrator  What it got instead was an interpretation and novel application of the Illinois Firearm Concealed Carry Act. What's happened here is that the arbitrator has taken the company's action in discharging the grievant for possession of a firearm on company property and invalidated the work rule that played the key role in the discharge by reference to an external law and his own interpretation of that internal law. By doing that, as is taught in the Roadmaster case, the arbitrator has acted beyond the scope of the collective argument agreement and outside of his authority. The facts are straightforward here. They're presented in the briefs. The arbitrator's decision is presented in the record. It's fairly straightforward as well. The arbitrator found that the grievant indeed had possessed a firearm on the company property. The arbitrator concluded that the workplace violence policy contained a rule that prohibited the possession of the firearm on company property and that the grievant violated that rule. Now, if he had stopped there and just proceeded to adjust cause determination, we wouldn't be here today. Instead of that, the arbitrator embarked on a frolic in the detour and took up the issue of the impact of an external law, the Illinois Concealed Carry Act, and that was the basis for the arbitrator's error. That law... Well, the just cause inquiry is not limited to whatever promulgated work rules there are in place. I agree with that, but the concept of just cause is also not unlimited, and as the Supreme Court taught in the Steelworkers Trilogy, the arbitrator's authority is still derived from the collective bargaining agreement and the collective bargaining relationship of the parties. Right, but if the company terminates an employee for committing a crime or some other wrong against external law, outside the workplace rules, because there is no workplace rule that governs that particular situation, you'd be arguing that that's an appropriate line of inquiry for the arbitrator to make in determining whether there's just cause, that it's appropriate to look to statutes and regulations, et cetera, that exist in state law or other sources to determine whether the termination was just, even though it didn't violate any particular work rule. There was no violation of a positively promulgated work rule. Well, more precisely, I guess what we're arguing here is that the interpretation and application of external law was directly contrary to the work rule and that that work rule was a product of the collective bargaining relationship and therefore a component of the collective bargaining agreement. And what evidence do you have in the record to support that the workplace rule was part of the collective bargaining agreement? Well, the workplace violence policy under the National Labor Relations Act is a mandatory subject of collective bargaining. That means that an employer cannot unilaterally implement a policy unless one of three things happens. Either the parties bargain to agreement over the policy or the union specifically waived bargaining over the policy in the contract or the employer unilaterally implemented it but the union acquiesced in that implementation. One of those three things must have happened because the union here did not challenge the employer's right to implement the policy. But isn't that separate from saying that the policy itself was part of the collective bargaining agreement? It's one thing to say under either of the three scenarios you gave that the union somehow acquiesced in it, agreed to it, bargained for it. But under any of those scenarios, why does that automatically make it part of the collective bargaining agreement that's at issue here? And do you have any law to support that? The Supreme Court recognized in the Warrior and Gulf Navigation cases and also in Enterprise Wheel, both of which are cited in the briefs, that the collective bargaining agreement incorporates the law of the shop, so to speak. The law of the shop being things like past practice, collective bargaining history, and other components of the relationship between the parties, those are all encompassed within, as it were, the penumbra of the collective bargaining agreement. But has any court interpreted the law of the shop to extend to workplace policies? Specifically to workplace policies? I can't point to one specifically right now. And are you claiming that the arbitrator in construing the collective bargaining agreement here and looking to outside law violated what he was supposed to do because he ignored the collective bargaining agreement or because it conflicted with the collective bargaining agreement? Well, because it conflicted with the collective bargaining agreement in the sense that it was directly contrary to the work rule. So let's assume the work rule is not part of the collective bargaining agreement. Would it have been okay for the arbitrator to look to the Concealed Carry Act? Well, I would still argue that it would have been outside the scope of his authority because there's nothing in the collective bargaining agreement itself that incorporates that external law. So if he's interpreting the just cause provision and there's nothing in the collective bargaining agreement that conflicts with the Concealed Carry Act, is he allowed to look to the Concealed Carry Act in order to interpret just cause? I'd say no, it's still beyond the scope of his authority because there's nothing in the contract that references that external law in any respect. You told me a minute ago that that would be permissible. If I did, I misspoke. Well, it wouldn't be permissible outside of arbitration.  The Roadmaster case controls here. We talked about Roadmaster before, and just to remind the court because it has been 30 years, the Roadmaster case involved the conflict between the National Labor Relations Act and a specific provision of the collective bargaining agreement. And this court vacated the arbitrator's award because the arbitrator ignored the collective bargaining agreement and offered instead his interpretation of the National Labor Relations Act. What we have here, and we've discussed this at some length now, is a similar situation in that we have an arbitrator who has interpreted and offered a novel interpretation of external law and has then used it to nullify a work world that the company implemented. Now, I would note that in one sense this case is more compelling than Roadmaster, and that is because in Roadmaster, at least, the National Labor Relations Act had a large body of law and regulations, interpretations that an arbitrator could have looked to for guidance. This statute is pristine. At least as far as this issue is concerned, there is no judicial interpretation of this statute. So the arbitrator's interpretation and application of it is truly novel in this case. I would say also that the union, when the union has suggested that Roadmaster is an opposite to this case because of the distinction between the collective bargaining agreement and the work world, again, I just want to reemphasize that the work world was necessarily a product of the collective bargaining relationship between the parties, and I believe the district court recognized that fact, and I respectfully request this court to uphold that decision. Thank you, counsel. I'll give you a minute. You have four seconds left. I appreciate that, Your Honor. Just real briefly, the opposing counsel's argument that the work rule was necessarily or he said there were three ways that this work rule could have happened, that it could have been bargained or specifically waived or acquiesced, that argument was never made to the arbitrator first off, and it simply isn't true. Employers implement work rules all the time on mandatory subjects of bargaining, and arbitral law is quite clear that a union can wait until that policy is implemented or applied in the form of discipline to challenge it for being unreasonable or unlawful. If you don't have any further questions... You did understand that you could bring it outside of arbitration, however. Bring... Bring the challenge to the Kitsille-Curry Act or the Act. I don't know, but I believe that is the case. Thank you. Thanks. Thanks to both counsel. The case is taken under advisement.